IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                    No. CR 10-0256 JB

FERNANDO SANTIBANEZ-SALAIS,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Sentencing Memorandum for Defendant Fernando Santibanez-Salais, filed December 28, 2010 (Doc. 36).  The Court held a sentencing hearing on January 21, 2011.  The primary issues are: (i) whether the Court should depart downward because Santibanez-Salais' criminal history is overstated; (ii) whether the Court should grant a downward departure based on cultural assimilation; and (iii) whether the Court should downwardly vary.  The Court will grant a downward departure on Santibanez-Salais' criminal history, because it believes his criminal history is over-represented.  The Court will exercise its discretion not to depart downward based on cultural assimilation, because it believes that Santibanez-Salais' case fits within the heartland of cases.  The Court will downwardly vary to a sentence of 21 months, based on the factors set forth in 18 U.S.C. § 3553(a).

## PROCEDURAL BACKGROUND

On January 28, 2010, the Grand Jury charged Defendant Fernando Santibanez-Salais with a violation of 8 U.S.C. §§ 1326(a) and (b) -- reentry of a removed alien.  See Indictment, filed January 28, 2010 (Doc. 10).  On March 1, 2010, Santibanez-Salais entered into a Non-Standard Fast

Track Plea Agreement, in which he pled guilty to a violation of 8 U.S.C. §§ 1326(a) and (b).  See Non-Standard Fast Track Plea Agreement, filed March 1, 2010 (Doc. 18).  On April 1, 2010, the United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR").  The PSR calculates a 16-level increase, under U.S.S.G. § 2L1.2(b)(1)A), to Santibanez-Salais' base offense level of 8, because Santibanez-Salais was previously deported following a conviction for a felony alien smuggling offense.  See PSR ¶ 12, at 3.  The PSR calculates a 3-level reduction for acceptance of responsibility, which resulted in a total offense level of 21.  See PSR ¶ 17, at 4.  The PSR then states that Santibanez-Salais' total offense level, pursuant to rule 11(c)(1)(C), is 20.  See PSR ¶ 18, at 4.  The PSR calculates Santibanez-Salais's criminal history as category III, adding 2 points for his conviction of conspiracy to smuggle non-citizens for financial gain and 2 points because, at the time he committed the instant offense, he was under a criminal justice sentence in the form of a three-year term of non-reporting supervised release, which was imposed as a result of his conviction for conspiracy to smuggle aliens.  See PSR ¶¶ 22, 23, 25 at 6.[1]  An offense level of 20 and a criminal history category of III establishes a guideline range of 41 to 51 months.

On December 28, 2010, Santibanez-Salais filed his Sentencing Memorandum.  Santibanez-Salais asks the Court to depart downward, because his criminal history is overstated and on the basis of cultural assimilation.  See Sentencing Memorandum at 3, 4, 9.  Santibanez-Salais also asks the

---

[1] The PSR originally calculated an additional point in Santibanez-Salais' criminal history, because he was released from the Bureau of Prisons on or about November 4, 2009, following his conviction for conspiracy to smuggle non-citizens for financial gain, and this offense occured less than two years after his release from imprisonment.  See PSR ¶ 24, at 6.  In an Addendum to the PSR, however, dated November 8, 2010, the USPO stated that, effective November 1, 2010, the guidelines eliminated the "recency" point provided in U.S.S.G. § 4A1.1(e), and that Santibanez-Salais' criminal history score has been impacted.  The PSR deleted the "recency" point it originally calculated in Santibanez-Salais' criminal history.  Santibanez-Salais therefore has 4 criminal history points.  This change, however, did not impact his criminal history category or guideline sentencing range.

Court for a downward variance.  <u>See</u> Sentencing Memorandum at 9.

The Plaintiff United States of America responded to Santibanez-Salais' Sentencing Memorandum on December 30, 2010.  <u>See</u> United States' Response to Defendant's Sentencing Memorandum Filed December 28, 2010 (Doc. 36), filed December 30, 2010 (Doc. 37)("Response"). The United States asked the Court to conclude that a sentence within the advisory guideline range of 41 to 51 months would constitute an appropriate sentence, and that no departures or variances from the advisory guideline sentencing range are warranted.  <u>See</u> Response at 11.

<u>**ANALYSIS**</u>

The Court will grant a downward departure on Santibanez-Salais' criminal history, because it believes his criminal history is overrpresented.  The Court will exercise its discretion not to depart downward based on cultural assimilation, because it believes that Santibanez-Salais fits within the heartland of cases.  The Court will then downwardly vary to a sentence of 21 months, based on the factors set forth in 18 U.S.C. § 3553(a).

I.     **THE COURT WILL DOWNWARDLY DEPART TO A CRIMINAL HISTORY <u>CATEGORY OF II.</u>**

Santibanez-Salais asserts that all four of his criminal history points were assessed for a single conviction of alien smuggling.  Regarding that conviction, Santibanez-Salais states that he was out-of-work and that his brother-in-law approached him to determine whether he would allow several illegal aliens to stay at his house.  Santibanez-Salais states that he did not receive direct payment from the illegal aliens, but that his brother-in-law compensated him for his actions.  He asserts that, while the criminal history points are properly calculated, his criminal history is more representative of someone with a criminal history of I or II as opposed to a criminal history of III.  He further asserts that he has never been arrested or convicted of crimes of violence, or for drug possession or

use.  Santibanez-Salais therefore asks the Court to reduce his criminal history category to category II.

The United States asserts that, because Santibanez-Salais' offense level and criminal history category are properly calculated, and because neither substantially over-represents the seriousness of his actual criminal history, it opposes a departure on those grounds.

The guidelines provide: "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."  U.S.S.G. § 4A1.3(b)(1).  The Court believes that a criminal history category of III substantially over-represents Santibanez-Salais' criminal history.  Most of the time, defendants with criminal history categories of III have two or three criminal convictions.  Santibanez-Salais was placed in criminal history category of III because, at the time that he committed the instant offense, he was under a criminal justice sentence in the form of a three-year term of non-reporting supervised release, which was imposed as a result of his conviction for conspiracy to smuggle aliens. Santibanez-Salais has 4 criminal history points, which places him at the bottom of the range of a criminal history category of III.  Santibanez-Salais received all his criminal history points as a result of his conviction of conspiracy to smuggle non-citizens, and, had the offense before the Court not occurred so quickly, Santibanez-Salais would have been in a criminal history category of II.  The Court does not believe that a criminal history category of III is a strong predictor of what Santibanez-Salais will do in the future, given that Santibanez-Salais will still receive a sizeable sentence, even if the Court departs to a criminal history category of II, and given that this offense is the first time he has received any sort of sentence for reentry.  The Court thinks that a downward departure to a criminal history category of I would be too much, because it does not believe that a

criminal history category of II substantially over-represents Santibanez-Salais' criminal history. Because the Court believes, however, that a criminal history category of III substantially over-represents Santibanez-Salais' criminal history, the Court will grant Santibanez-Salais' request, and will downwardly depart to a criminal history category of II.

## II.   THE COURT WILL DENY SANTIBANEZ-SALAIS' REQUEST FOR A DOWNWARD DEPARTURE BASED ON CULTURAL ASSIMILATION.

Santibanez-Salais argues that a downward departure based on cultural assimilation is appropriate, because he meets the criteria set forth in application note 8 to U.S.S.G. § 2L1.2. Santibanez-Salais asserts that he first moved to the United States at age ten, that he attended school in the El Paso, Texas area from the sixth grade through the tenth grade before dropping out to find work to support his family; that he has resided in the United States since he first moved here when he was ten years old, with brief periods of removal to Mexico, including his deportations; that his entire family resides in El Paso; and that he has lived and worked primarily in El Paso for the majority of his life.  Santibanez-Salais further asserts that his conviction of conspiracy to smuggle non-citizens for financial gain is his only significant crime and that, while he does not dispute that this crime is a serious one, none of the individuals staying with him were forced to stay there, forced to provide funding, or injured.  Santibanez-Salais asserts that, although he was convicted of alien smuggling after his first deportation, he is not a threat to the public.

The United States contends that, because of the seriousness of Santibanez-Salais' criminal history, the fact that he has re-entered the United States illegally on at least nine separate occasions -- he had nine local apprehensions by the United States Border Patrol in El Paso and Ysleta, Texas, which resulted in voluntary returns to Mexico -- and the likelihood of increased risk to the public of further crimes that Santibanez-Salais might commit, a downward departure based on cultural

assimilation is not warranted.

The Court will deny Santibanez-Salais' request for a downward departure based on cultural assimilation.  Application note 8 to U.S.S.G. § 2L1.2 states:

> There may be cases in which a downward departure may be appropriate on the basis of cultural assimilation.  Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

> In determining whether such a departure is appropriate, the court should consider, among other things, (1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, (6) the seriousness of the Defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States.

U.S.S.G. § 2L1.2 app. note 8.[2]  Unfortunately, Santibanez-Salais' situation is not significantly different from the situations of other the defendants that the Court sees day in and day out.  Many defendants before the Court are approximately ten years old when they come to the United States.  Although the Court is not holding that a ten-year old will never qualify for a downward departure based on cultural situation, the Court does not believe that Santibanez-Salais' situation warrants a downward departure.  Santibanez-Salais did not attend school continuously in the United States, and he dropped out of school in tenth grade.  He used an interpreter at the sentencing hearing.  He has been deported several times, but he usually came back into the United States quickly; the Court

---

[2] This application note was added to the guidelines effective November 1, 2010.  The Court uses the guidelines manual in effect on the date the defendant is sentenced.  See U.S.S.G. § 1B1.11 ("The Guidelines Manual in effect on a particular date shall be applied in its entirety.").

cannot say he has resided continuously in the United States since he was ten.  Santibanez-Salais has

developed family ties in the United States.  His three sisters, his brother, and his former girlfriend

and their three children, reside in El Paso.  The Court is not convinced, however, that he has

developed cultural ties to the United States.  Santibanez-Salais is not a person who came into the

United States as a young child, and who is just as American as other young children who have

grown up in the United States.  Santibanez-Salais also has a conviction for conspiracy to smuggling

non-citizens into the United States, and appears to still have ties to Mexico, although he is living on

this side of the border.  The Court has granted a downward departure on Santibanez-Salais' criminal

history, but his conviction for conspiracy to smuggle non-citizens for financial gain and history of

illegal reentry into the United States concerns the Court.  The Court will not depart for cultural

assimilation, because the Court believes it is not warranted given Santibanez-Salais' age when he

entered the United States, the fact that he did not attend school continuously, his ties to Mexico, his

apparent lack of full cultural ties to the United States, and his criminal history.  Unfortunately, the

Court sees a number of illegal aliens who come into the United States around age ten, and the Court

has trouble distinguishing Santibanez-Salais from the many others before the Court.  The Court

believes Santibanez-Salais fits within the heartland of reentry cases that the Court, other border

courts, and federal courts generally see.  Although a departure is authorized under the law, the Court

will exercise its discretion not to depart, because it believes that Santibanez-Salais fits within the

heartland of cases.  The Court will, however, take his arguments into account in his request for a

variance and in fashioning a sentence that reflects all the factors in 18 U.S.C. § 3553(a).

## III.    THE COURT WILL DOWNWARDLY VARY TO A SENTENCE OF 21 MONTHS.

The Court has reviewed the PSR and its factual findings.  There not being any objections to

those, the Court will adopt those as its own.  The Court has also considered the sentencing guideline

applications in the PSR, and the Court having sustained Santibanez-Salais' request for a downward departure on over-representation and denied his request for downward departure based on cultural assimilation, the Court will adopt the sentencing guideline applications in the PSR as its own with the exception of the reduced criminal history category of II.

The Court has also considered the factors set forth in 18 U.S.C. § 3553(a). Santibanez-Salais' offense level is 21 before any downward departure, and his criminal history category is II, establishing a guideline imprisonment range of 41 to 51 months. Pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, however, the Court accepts the plea agreement which stipulates to an offense level of 20, because the Court is satisfied that the agreed offense level departs for justifiable reasons, which include the United States Attorney's adoption of the early disposition program in this district. In Section 401(m)(2)(B) of the PROTECT Act, Congress approved early disposition or fast-track programs. This departure on Santibanez-Salais' offense level is at the bottom of the range of departures that Congress allowed under Section 401, and the specific reason for the downward departure is that the plea agreement is pursuant to a fast-track program. The Court's judgment and sentence will therefore be consistent with the plea agreement.

An offense level of 20 combined with a criminal history category of II establishes a guideline range for 37 to 46 months. The Court notes Santibanez-Salais reentered the United States after previously being deported and that deportation was subsequent to a conviction for conspiracy to smuggle aliens. The Court has carefully considered the guidelines, but in arriving at a sentence, the Court has taken into account not only the guidelines but other sentencing goals as well. Specifically, the Court has considered the guideline sentencing range for the applicable category of offense committed by the applicable category of defendant. Even though the Court has granted downward departures on Santibanez-Salais' offense level and criminal history category, it believes that the

punishment that is set forth in the guidelines is still not appropriate for this offense. The Court has considered the kinds of sentences and ranges established by the guidelines, and the Court believes that, for a number for reasons, a further variance is appropriate. The Court believes that the downward departure on over-representation was appropriate to reflect Santibanez-Salais' criminal history, but believes that the circumstances of his conviction for conspiracy to smuggle non-citizens counsel for a further variance. The 16-level enhancement is a considerable enhancement for a set of circumstances that, while they constitute a per se crime of violence, really did not involve a violent situation. The crime involved Santibanez-Salais harboring people moving into the United States, and there is nothing to suggest that the people were in any actual or serious danger. Santibanez-Salais was harboring those individuals for money, his actions were a crime, and he has been punished for his actions, but one can get a sense for how serious the crime was from the sentence he received from the Western District of Texas, a sentence of imprisonment for 12 months and 1 day. As a result of that conviction, Santibanez-Salais is facing a sentence well above what he received for the original sentence.

The Court believes that it still needs to treat seriously the smuggling crime, because Congress treats the crime seriously with severe sentences and enhancements, but it is not sure that it needs to treat the prior crime as seriously as an increase of 16 levels does. The Court will treat the prior crime as deserving apparently a 12-level increase. The Court believes that treating the prior crime as deserving a 12-level increase still underscores Congress' seriousness without detracting too much from Congress' concern. The Court also believes that 12 levels more accurately reflects the seriousness of the circumstances that were involved in the crime.

The Court did not grant a downward departure on cultural assimilation, because it did not believe that Santibanez-Salais' situation fell outside of the heartland of cases. There are a number

of factors, however, that call for a variance based on the substantial amount of time that Santibanez-Salais has spent living in the United States, his education in the United States, his work in the United States, his family in the United States, and fairly minimal ties to Mexico.  The Court will therefore grant a further downward variance that is equivalent to about 1 offense level.

The Court will therefore downwardly vary an amount equaling approximately 5 offense levels, which places Santibanez-Salais at a range equaling approximately an offense level at 15, which establishes a range of 21 to 27 months.  Santibanez-Salais proposed a sentence of 20 or fewer months.  Although Santibanez-Salais' proposal is thoughtful, the Court believes that a sentence slightly higher than Santibanez-Salais' proposed sentence -- a sentence of 21 months -- better reflects the seriousness of this offense and his prior offense.  The Court believes that, given that Santibanez-Salais has not really received a reentry sentence before this one and it is uncertain how he will respond, this sentence will promote respect for the law.  The Court believes that this 21-month sentence provides a more just sentence than a higher one, given the circumstances of Santibanez-Salais' criminal history.  The Court is optimistic that, because this is Santibanez-Salais' first reentry crime, this sentence will afford adequate deterrence.  Santibanez-Salais' criminal history does not contain crimes of actual violence or instances where others were at serious risk of injury, and he does not appear to be a danger to the public, so the Court does not believe that it has to overemphasize the protecting-the-public factor.  The Court believes this 21-month sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a).  And while the Court's task as a trial court is not to come up with a reasonable sentence, but to balance the 18 U.S.C. § 3553(a) factors correctly, see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section

3553(a)(2).")(citation omitted), the Court believes that this sentence is more reasonable than one in the three year range.  Most importantly, this sentence is sufficient without being greater than necessary to comply with the purposes set forth in the Sentencing Reform Act.

**IT IS ORDERED** that Santibanez-Salais' requests in his Sentencing Memorandum are granted in part and denied in part in accordance with this Memorandum Opinion and Order, and the Court sentences Defendant Fernando Santibanez-Salais to a term of 21 months.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
   United States Attorney
Lynn Wei-Yu Wang
   Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Jerry A. Walz
Walz and Associates
Albuquerque, New Mexico

     *Attorney for the Defendant*